# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Byron R. Peterson,                                    Civil No. 06-3796 (PAM/JSM)

             Plaintiff,

v.                                                    **MEMORANDUM AND ORDER**

Spectra Financial, Inc.; Argent
Mortgage Company; Deutsche
Bank National Trust Company;
and AMC Mortgage Services,

             Defendants.

---

This matter is before the Court to determine whether the Court should preliminarily enjoin Defendants from commencing an unlawful detainer action against Plaintiff Byron R. Peterson.[1]  For the reasons that follow, the Court will not issue a preliminary injunction.

## BACKGROUND

In September 2005,[2] Defendant Spectra Financial, Inc., a mortgage broker, assisted Peterson in obtaining a loan.  The loan was secured by real property located in Eagan, Minnesota.

Spectra provided several forms to Peterson in conjunction with the loan transaction.

---

[1] Peterson filed a Motion for a Temporary Restraining Order on March 20, 2007, the day before the redemption period expired.  The Court granted the Motion that day and notified the parties to appear before the Court to address whether the Order should continue as a preliminary injunction.  The hearing on the matter occurred on March 28, 2007.

[2] The Complaint and memorandum in support of the Motion for Temporary Restraining Order state that Peterson engaged Spectra's services in September 2003. However, the exhibits to the Complaint are dated September 2005.

First, it provided an estimate of costs, which stated that one percent of the estimated base loan would be charged as a yield-spread premium. The disclosure also noted that the premium was "compensation to Broker not paid out of Loan Proceeds." (O'Neill Aff. Ex. 6 at line 814.) Second, Spectra provided Peterson with a Real Estate Settlement Procedures Act disclosure, which notified Peterson that Spectra did not service mortgage loans and that Spectra sold all of the mortgage servicing for loans it originated. (Id. Ex. 7.) Third, Spectra supplied Peterson with a mortgage originator fee disclosure, which advised Peterson that Spectra "may be acting as an independent contractor and not as your agent." (Id. Ex. 8.) The disclosure also stated that Spectra "may also be paid by the lender based on (i) the value of the mortgage loan or the related servicing rights in the market place or (ii) other services, goods or facilities performed or provided by the Originator to the lender." (Id.) Finally, it stated that the HUD-1 Settlement Statement would identify the final amount of fees and charges associated with the loan.

On September 26, 2005, Peterson received a $157,250 loan and executed a mortgage against the property in favor of Defendant Argent Mortgage Company. At the closing, Peterson received copies of a HUD-1 Settlement Statement, which summarized the terms of the transaction. Several lines under the "Items Payable in Connection with Loan" column identify fees that were "paid from borrower's funds at settlement." (Id. Ex. 10.) In addition, Line 812 states that Spectra received a premium yield adjustment from Argent Mortgage in the amount of $1,572.50. An abbreviation next to the amount indicates that the amount was

paid outside the closing and it was "shown here for information purposes and . . . not included in the totals." (Id.)

The first loan payment was due November 1, 2005. Peterson made a few payments, but eventually stopped. In August 2006, Defendant Deutsche Bank National Trust Company, the mortgagee by assignment, initiated foreclosure proceedings by advertisement pursuant to Minnesota Statute § 580.01. On September 14, 2006, Peterson notified Defendants of his intent to rescind the loan transaction. A week later, Deutsche Bank purchased the property at the sheriff's sale for $168,543.18, and Peterson commenced this action. The six-month redemption period on the mortgage foreclosure was set to expire on March 21, 2007, but the Court granted Peterson's Motion for a Temporary Restraining Order on March 20, 2007.

## C.     The Complaint

Peterson alleges that Argent Mortgage violated 12 C.F.R. § 226.18(d)(1)(i), a regulation implementing the Truth in Lending Act (TILA), by understating the amount financed by $895. Peterson alleges that Spectra violated the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69, and the Minnesota Residential Mortgage Originator and Servicer Licensing Act, Minn. Stat. § 58.16, by failing to disclose the $1,572 yield-spread premium paid to Spectra. He seeks numerous remedies, including a declaration that rescission of the loan transaction is proper.

**DISCUSSION**

Injunctive relief is considered to be an extraordinary remedy that is not to be routinely granted. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citation omitted). However, "a preliminary injunction may issue if the movant has raised questions so serious and difficult as to call for more deliberate investigation." Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981).

Although the Court has broad discretion when determining whether to issue a preliminary injunction, it must consider four factors: (1) the probability of success on the merits, (2) the threat of irreparable harm to the movant, (3) the balance between the harm and the injury that granting the injunction will inflict on other interested parties, and (4) the public interest. Lankford v. Sherman, 451 F.3d 496, 503 (8th Cir. 2006) (citations omitted). The party seeking injunctive relief bears the burden of establishing these factors. Id. (citation omitted). No single factor is dispositive, and the Court must balance all factors to determine whether the injunction should issue. Id. (citations omitted).

**A.      Likelihood of Success**

The likelihood of success on the merits factor weighs heavily in favor of denying the injunction. The Complaint alleges that Spectra violated the Minnesota Prevention of Consumer Fraud Act and the Minnesota Residential Mortgage Originator and Servicer Licensing Act. Peterson is unlikely to succeed on these claims because he lacks prudential standing.

To bring a cause of action under these statutes, Peterson must satisfy the requirements of the Private Attorney General Statute, Minn. Stat. § 8.31.  Davis v. U.S. Bancorp, 383 F.3d 761, 767-68 (8th Cir. 2004) (claim for violation of Minn. Stat. § 325F.69 must meet requirements of private attorney general statute); Kivel v. WealthSpring Mortg. Corp., 398 F. Supp. 2d 1049, 1056-57 (D. Minn. 2005) (Doty, J.) (claims for violation of Minn. Stat. §§ 58.01-58.17 are subject to requirements of private attorney general statute); Ly v. Nystrom, 615 N.W.2d 302, 314 (Minn. 2000); Timeline, LLC v. Williams Holdings #3, LLC, 698 N.W.2d 181, 189 (Minn. Ct. App. 2005) (claim for violation of Minn. Stat. § 58.13 must be brought pursuant to private attorney general statute).  Specifically, Peterson must show that his causes of action benefit the public.  See Davis, 383 F.3d at 768.  "Litigation over an alleged misrepresentation that was made only to one person does not advance state interests and enforcement has no public benefit."  Id.  (citations and internal quotations omitted). Because Peterson seeks remedies for his exclusive benefit and because the damages to Peterson arose from a one-on-one transaction, he cannot establish prudential standing.  Thus, Peterson is highly unlikely to succeed on his claims against Spectra.

The Complaint alleges that Argent Mortgage violated 12 C.F.R. § 226.18(d)(1)(i) by understating the amount financed by $895.  That regulation provides:

> In a transaction secured by real property or a dwelling, the disclosed finance charge and other disclosures affected by the disclosed finance charge (including the amount financed and the annual percentage rate) shall be treated as accurate if the amount disclosed as the finance charge: (i) is understated by no more than $100; or (ii) is greater than the amount required to be disclosed.

12 C.F.R. § 226.18 (emphasis added).  Similarly, 15 U.S.C. § 1635(i)(2), the TILA provision that creates the rescission right in a foreclosure, expressly states that a finance charge will be considered accurate if the amount disclosed as a finance charge "is greater than the amount required to be disclosed."

If a lender understates the amount financed, it effectively overstates the finance charge because the amount financed and the finance charge are inversely related.  See Vandenbroeck v. Commonpoint Mortg. Co., 22 F. Supp. 2d 677, 688 (W.D. Mich. 1998); see also In re Strong, Bkrtcy. No. 01-35854F, 2004 WL 5032530, at *42 n.40 (Bkrtcy. E.D. Pa. Aug. 31, 2004) ("Obviously, if the initial computation of the amount financed is understated, then by this method the finance charge disclosed will be overstated.").  Moreover, neither TILA nor its implementing regulations provide for rescission where the lender understates the amount financed and thereby overstates the finance charge.  Because Argent Mortgage effectively overstated the finance charge by understating the amount financed, it is unlikely that Peterson will prevail on his claims against Argent Mortgage.  See Carmichael v. The Payment Center, Inc., 336 F.3d 636, 642 (7th Cir. 2003) (no rescission where inaccurate final payment disclosure resulted from overstated finance charge); see also Wade v. New Century Mortg. Corp., No. 03-7401, 2004 WL 2211617, at *2 (N.D. Ill. Sept. 30, 2004) (dismissing claim where inaccuracy fell within TILA tolerance limits).

Because it is improbable that Peterson will succeed on the merits of his claims, this factor weighs heavily in favor of denying the injunction.  See Higbee v. Starr, 698 F.2d 945, 947 (8th Cir. 1983) (although denial of preliminary injunction to prevent eviction deprived

plaintiff of place to live and constituted irreparable harm, denial of injunction was appropriate because it was highly doubtful that plaintiff would succeed on the merits).

**B.      Harms**

The irreparable harm factor weighs heavily in favor of granting an injunction, as denying the injunction will likely result in eviction.  <u>See</u> <u>id</u>.  However, the balance of harms tilts only slightly in favor of an injunction.  An injunction will allow Peterson to postpone losing his property and having his life substantially disrupted.  However, it will also preclude Defendants from obtaining possession of the property and earning income from the property. Considering these harms, the Court finds that Peterson faces harm that is slightly more substantial than the harm faced by Defendants.

**C.      Public Interest**

The public policy factor weighs against the issuance of the injunction.  Public policy favors protecting the victims of aggressive and misleading lending tactics.   However, Peterson has not shown he has standing to assert claims based on such tactics or that Defendants engaged in such tactics.  Moreover, public policy also favors enforcement of contractual obligations and the payment of debt obligations.  Thus, the factor weighs in favor of denying the injunction.

**CONCLUSION**

Because Peterson has failed to establish the likelihood of success on the merits and because public policy favors the issuance of an injunction, **IT IS HEREBY ORDERED** that:

1.      The March 20, 2007 Order (Docket No. 28) is **VACATED**; and

2.      The Court will not enjoin Defendants from proceeding with a state court unlawful detainer action.

Dated: March 29, 2007

s/ Paul A. Magnuson

Paul A. Magnuson
United States District Court Judge